**In Re DEVAULT MANUFACTURING COMPANY, Bankrupt.**

**JEFFERSON BANK,**

v.

**DEVAULT MANUFACTURING COMPANY.**

Civ. A. No. 80–2867.

United States District Court, E. D. Pennsylvania.

July 31, 1981.

Paul R. Rosen and Michael Minkin, Philadelphia, Pa., for plaintiff.

James W. Adelman and Nathan Lavine, Philadelphia, Pa., for defendant.

Charles Thompson, Jr. and William A. Slaughter, Philadelphia, Pa., for creditors' committee.

Donald M. Collins, Philadelphia, Pa., for trustee.

## OPINION AND ORDER

BECHTLE, District Judge.

Presently before the Court is an appeal from an order of a bankruptcy judge entered in a reclamation proceeding. Appellant, Jefferson Bank ("Jefferson"), initiated the reclamation proceeding to have determined the voidability of its security interest in the property of the debtor, Devault Manufacturing Co. ("Devault"). The order appealed from granted leave to Devault's Creditors' Committee ("Creditors' Committee"), representing Devault's unsecured creditors, to intervene and to present additional evidence in the reopened reclamation proceeding. 4 B.R. 382. For the reasons stated below, the Court accepts the appeal and affirms.

## I. Statement of the Case

Between September 1, 1976, and June 21, 1977, Jefferson loaned Devault $200,000.00. On or before December 14, 1978, Jefferson orally demanded repayment of the entire balance due, then amounting to the $200,000.00 principal amount of the loan. Negotiations ensued, culminating in a series of refinancing arrangements, including Devault's agreement to execute a security agreement on various collateral.

Devault did not execute and return the security agreement, along with the appropriate financing statements for filing, until March 13, 1979. Thereafter, Jefferson filed the financing statements with the Commonwealth of Pennsylvania on March 21, 1979, and with the Prothonotary of Chester County, Pennsylvania, on March 22, 1979.

On April 10, 1979, Devault filed a petition for arrangement under Chapter XI of the Bankruptcy Act. 11 U.S.C. §§ 701–799 (1976) ("Old Act") (repealed by the Bankruptcy Reform Act of 1978, Act of Nov. 6, 1978, Pub.L.No. 95–598, § 401, 92 Stat. 2549). On June 20, 1979, Jefferson filed its Complaint in Reclamation, by which Jefferson sought to have itself declared a secured creditor of Devault and to have its security interest in Devault's assets affirmed. The matter was submitted to the bankruptcy judge on a Stipulation of Facts ("the First Stipulation") filed on January 31, 1980. On March 28, 1980, the bankruptcy judge entered judgment declaring Jefferson to be a secured creditor.

On April 3, 1980, after a series of conferences with the bankruptcy judge, counsel for Jefferson signed and filed a Supplemental Stipulation of Facts ("Supplemental Stipulation"), which had not been filed prior to the bankruptcy court's decision, despite Devault's understanding that Jefferson had agreed that the facts contained therein should be part of the record. Thereafter, the Creditors' Committee filed an application to intervene for the purpose of introducing additional evidence bearing on Jef-

ferson's status as a secured creditor, which had not been included in either stipulation. In addition, Devault itself filed a motion for relief from judgment, for reconsideration, and for the right to introduce, at a new trial, facts not contained in the two previous stipulations. On June 5, 1980, the bankruptcy court granted Devault's motion for reconsideration to consider the facts contained in the Supplemental Stipulation, but denied Devault's motion to introduce additional facts. The bankruptcy court did, however, grant the Creditors' Committee's motion to intervene and to introduce additional evidence. Jefferson has appealed the order, but only insofar as it permitted the Creditors' Committee to intervene and to present additional evidence.

## II. *Appealability*

Before considering the merits of Jefferson's appeal, the Court must first consider appellees' contention that the order of the bankruptcy judge is not appealable. Appellees base their contention on two grounds. First, appellees contend that, since Jefferson's appeal was filed after the effective date of the Bankruptcy Reform Act of 1978, the Reform Act must govern the procedures for perfecting an appeal. *See* Act of Nov. 6, 1978, Pub.L.No. 95–598, § 402, 92 Stat. 2549 ("Reform Act") (effective October 1, 1979). Jefferson has not followed those procedures in this case. Secondly, appellees argue that, even if the present appeal is properly filed, the interlocutory order appealed from is "of that kind of . . . interlocutory order from which an instantaneous appeal would be most inappropriate." Brief of Appellee, Donald M. Collins, Trustee, at 5.

■ The Court need not dwell on appellees' first argument. Section 403(a) of the Reform Act provides:

A case commenced under the Bankruptcy Act [the Old Act] and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

Act of Nov. 6, 1978, Pub.L.No. 95–598, § 403(a), 92 Stat. 2549. As explained in the Senate Report accompanying the bill, "the provisions of [the Reform Act] are not to affect cases commenced under prior law, which are to proceed, *with respect to both substantive and procedural matters*, in the same fashion as though [the Reform Act] were not in effect." S.Rep.No. 989, 95th Cong., 2d Sess. 166 (1978) ("Senate Report") (emphasis added), *reprinted in* [1978] U.S. Code Cong. & Ad.News 5787, 5952. *See also* Senate Report, *supra*, at 20, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5806. The House Report made the following similar observations:

[Section 402(a)] . . . continues cases pending as of the effective date of the bill without change. The new law *will not affect* cases commenced under the old law. Those cases will proceed as though this Act did not take effect. This section applies to substantive as well as *procedural* matters . . .

H.R.Rep. No. 595, 95th Cong., 2d Sess. 459 (1978) ("House Report") (emphasis added), *reprinted in* [1978] U.S.Code Cong. & Ad. News 5963, 6414–6415. Thus, it is clear that Jefferson need only comply, as it has, with the appellate procedure provided under the Old Act. *See* 1 Collier on Bankruptcy ¶ 7.03[1] (15th ed. 1980).

The provision relied upon by defendant, § 405 of the Reform Act, does not apply here. Section 405 is only intended to govern appeals filed during the "transition period" in cases commenced under the Reform Act. *See* Senate Report, *supra*, at 167, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5787, 5953; House Report, *supra*, at 460, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5963, 6416. Since Jefferson complied with the appellate procedure under the Old Act—and appellees make no claim to the contrary—the Court holds that Jefferson's appeal is properly perfected.

■ The Court also rejects appellees' contention that the order appealed from is not of the kind which should be reviewed on immediate appeal. Under § 39 of the Old Act, 11 U.S.C. § 67 (1976), interlocutory as well as final orders of the referee are reviewable by the district court. *See id.*; 2A Collier on Bankruptcy ¶ 39.21, at 1511 (14th ed. 1978). Nevertheless, "review of interlocutory orders which relate to mere preliminary steps in a proceeding, and which may be passed upon effectively at the final stage of the proceeding, is not encouraged." *Id.* In the present case, the Court believes that the order permitting intervention of the Creditors' Committee to present additional evidence merits review. The order, although interlocutory, is not "merely preliminary." On the contrary, the order deals with a pivotal issue in the proceeding below arising at the post-trial stage: whether the proceedings may properly be extended to permit the receipt of evidence bearing directly on the voidability of Jefferson's security interest, and which may cause the bankruptcy judge to hold Jefferson's security interest voidable. If it would be improper to admit the evidence now, for procedural reasons, it is entirely proper that Jefferson should receive that determination before the admission of the damaging evidence prejudices Jefferson on the merits. For these reasons, the Court, in its discretion, will consider the merits of the appeal.

### III. *The Merits of the Appeal*

■ Jefferson only appeals from that portion of the bankruptcy court's order granting "the motion of the creditors' committee for leave to intervene and to reopen the reclamation proceeding for the purpose of offering additional evidence." Record Item No. 6. In reviewing the propriety of the bankruptcy court's action, the Court will follow the same course pursued by the court below, examining first the decision to permit the Creditors' Committee to intervene, and then the decision to permit the Creditors' Committee to offer additional evidence.

Intervention in bankruptcy proceedings is governed in the first instance by R.Bankr.P. 724, which incorporates by reference Fed.R. Civ.P. 24. In the present case, the bankruptcy judge held that the Creditors' Committee was entitled to intervene of right pursuant to Fed.R.Civ.P. 24(a)(2), which provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action:

.　　.　　.　　.　　.

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The rule creates a three-part test for intervention of right:

On timely application an absentee shall be permitted to intervene if (1) he claims an interest relating to the property or transaction that is the subject of the action, and (2) he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless (3) his interest is adequately represented by existing parties.

7A C. Wright & A. Miller, Federal Practice and Procedure § 1908, at 495 (1972) [hereinafter cited as "Wright & Miller"].

The Creditors' Committee clearly has an "interest relating to the property or transaction which is the subject of the action." As noted by the bankruptcy judge, the Creditors' Committee represents Devault's unsecured creditors, who, by definition, have outstanding claims against Devault's assets. The avoidance of Jefferson's security interest will increase the amount of money each creditor will receive. Such a direct, pecuniary interest is clearly sufficient for intervention of right.

The Creditors' Committee also meets the second, closely-related test of being "so situated that the disposition of the action may as a practical matter impair or impede his

ability to protect [his] interest." If the result of the reclamation proceeding is that Jefferson's security interest is upheld, those assets embraced by the security interest will not be available for distribution among the unsecured creditors, and each unsecured creditor will receive a smaller fraction of the amount owed it by Devault. Under principles of *res judicata*, the Creditors' Committee may only be able to avert that result in the reclamation proceeding initiated below. Thus, denying intervention may indeed impair the Creditors' Committee's ability to protect its interest.

■ Finally, the Court finds no error in the bankruptcy court's conclusion that the interest of the Creditors' Committee was not adequately represented by Devault. Inadequacy of representation may be shown "by proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervener, *or by the failure of the representative in the fulfillment of his duty*." *Stadin v. Union Electric Co.*, 309 F.2d 912, 919 (8th Cir. 1962) (Blackmun, J.), *cert. denied*, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963) (emphasis added). *See also* 7A Wright & Miller, *supra*, § 1909, at 523. In the present case, the bankruptcy judge found that Devault did not adequately represent the interests of the Creditors' Committee because it failed to present certain available evidence tending to prove that Jefferson's security interest is voidable. Such a failure demonstrates, without question, the inadequacy of Devault's representation.

■ An application for intervention of right must also be timely. *See* Fed.R.Civ.P. 24. Whether an application for intervention is timely is a determination lying within the discretion of the trial court, and the trial court's decision will not be reversed unless it is demonstrated that the court abused its discretion. *See NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973). The Court of Appeals for the Third Circuit has articulated three factors to be considered in determining whether an application is timely:

(1) how far the proceedings have gone when the movant seeks to intervene; (2) prejudice which resultant delay might cause to other parties; and (3) the reason for the delay. *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 506 (3rd Cir.), *cert. denied sub nom. Fire Officers Union v. Pennsylvania*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). Reviewing the decision of the bankruptcy judge in light of these three factors, the Court concludes that the bankruptcy judge did not abuse his discretion in holding that the application was timely.

First, although the proceedings below have already once proceeded to judgment, relief from that judgment has since been granted by consent of the existing parties in order to permit consideration of the facts contained in the Supplemental Stipulation. Thus, the interest in the finality of judgment, which ordinarily militates strongly against permitting intervention after the entry of judgment, is not implicated here. Secondly, the existing parties to the litigation will suffer little, if any, prejudice as a result of the intervention of the Creditors' Committee. The Creditors' Committee seeks to intervene solely to introduce a limited range of evidence not presented heretofore. No discovery or other pretrial procedures are to be invoked which might further postpone resolution of Jefferson's claim, nor does the Creditors' Committee propose to introduce evidence repetitive of that which has already been introduced by stipulation. Finally, as the court below noted, the Creditors' Committee offered a valid reason for delay. The bankruptcy judge stated in his opinion that Devault was represented by "able counsel with recognized expertise in the practice of bankruptcy law," Opinion, Record Item No. 6, at 2, and concluded that only upon the realization of an actual failure by the representative to introduce relevant evidence bearing on the voidability of Jefferson's security interest would the Creditors' Committee have had reason to challenge the adequacy of Devault's representation. Since the Creditors' Committee thus filed its application to in-

tervene at the earliest possible moment, any "delay" in applying is wholly excusable.

For the reasons stated above, the Court finds no error in the bankruptcy court's decision to permit intervention, and will therefore affirm that portion of the bankruptcy court's order.

Finally, the Court must address the question whether the court below erred in reopening the reclamation proceeding to permit the Creditors' Committee to introduce additional evidence. Having otherwise reopened the proceeding solely for the purpose of permitting the introduction of the Supplemental Stipulation, the bankruptcy court treated the Creditors' Committee's motion as a motion for new trial under Fed.R.Civ.P. 59(a)(2) or, in the alternative, as a motion for relief from judgment under Fed.R.Civ.P. 60(b). The bankruptcy court denied the motion insofar as it was based on Rule 59(a)(2), and that ruling is not challenged here. However, the bankruptcy court granted the motion insofar as it sought relief from judgment under Rule 60(b). Jefferson has appealed that ruling.

■ Bankruptcy courts have the authority to grant relief from judgment pursuant to Fed.R.Civ.P. 60(b) because of its applicability to bankruptcy proceedings through R.Bankr.P. 924. Moreover, courts are accorded "a very large measure of discretion" in passing on motions for relief from judgment and a reviewing court will not set aside an exercise of that discretion "unless it is persuaded that under the circumstances of the particular case the action ... is an abuse of discretion." 11 Wright & Miller, *supra,* § 2872, at 261 (1973). *See Wagner v. Pennsylvania Railroad Co.,* 282 F.2d 392, 397–398 (3d Cir. 1960). We turn to the merits of the bankruptcy court's decision with these principles in mind.

In granting relief, the bankruptcy court relied alternatively upon two of the six grounds for relief provided for in Rule 60(b): "(1) mistake, inadvertence, surprise, or excusable neglect;" and "(6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(1) & (6). The bankruptcy court first held that the Creditors' Committee's decision to rely on Devault's counsel to present the evidence which they, the Creditors' Committee, now seek to introduce, and Devault's failure to do so, constituted "mistake, inadvertence, surprise, or excusable neglect" within the meaning of Rule 60(b)(1). In so holding, the bankruptcy court emphasized that the evidence was not omitted because of any fault of the Creditors' Committee; on the contrary, the Creditors' Committee had "acted reasonably in providing Devault's attorney with all the evidence it had and in relying on him to present that evidence to the court." Opinion, Record Item No. 6, at 16. This Court cannot say that, in granting relief under such circumstances, the bankruptcy court abused its broad discretion under Fed.R.Civ.P. 60(b)(1).

Moreover, even if the Creditors' Committee's mistaken reliance on Devault's well-qualified counsel is not an error encompassed by Rule 60(b)(1), the bankruptcy court's alternative holding was also within the bounds of the broad discretion accorded courts under Rule 60(b). The bankruptcy court stated in its opinion that "[under] the facts of this case, justice and equity demand that we allow the creditors' committee to intervene and to introduce additional evidence because to deny it that right would result in a decision predicated on incomplete facts." Opinion, Record Item No. 6, at 16–17. The bankruptcy judge has a first-hand understanding of the facts of the case, and those facts are simply not before this Court on this appeal. Thus, the bankruptcy judge is better able to gauge the necessity and propriety of considering additional evidence. In addition, the order of the bankruptcy judge, as it stands, eliminates a danger of injustice. Although the Creditors' Committee represents those directly interested in who gets cash or property distributed from Devault, they are not, as yet, before the bankruptcy court to protect those interests. Instead, the Creditors' Committee must rely on Devault, which may be indifferent as to who gets the distributed cash or property. By permitting the Creditors' Committee to present addi-

**542**

tional evidence, the court below averts the danger of permitting a disinterested party to prejudice, through simple neglect, those directly interested.

For these reasons, the order of the bankruptcy court will also be affirmed insofar as it reopens the proceeding to permit the Creditors' Committee to present additional evidence.

### IV. Summary

The appeal from the order entered below was properly filed and may be addressed by this Court. After considering the appeal on the merits, the Court has concluded that the court below acted within its discretion in issuing the order appealed from, and that the order should, therefore, be affirmed.

An appropriate Order will be entered.